(No. 21032.

WILSON BROTHERS, Appellee, *vs.* THOMAS HAEGE *et al.*—
(CHARLES A. BEERS, Trustee in Bankruptcy, Appellant.)

*Opinion filed December 17, 1931—Rehearing denied Feb. 5, 1932.*

Jones, J., took no part.
Orr, J., dissenting.

J. J. Neiger, for appellant.

Connelly, Walker, Searle & Hubbard, (Franklin P. Searle, of counsel,) for appellee.

Mr. Justice Heard delivered the opinion of the court:

On April 22, 1925, Thomas Haege, a retail merchant of Rock Island, made an assignment to the American Trust and Savings Bank of that city for the benefit of his creditors. Haege was thereafter adjudicated a bankrupt, and on May 6, 1925, appellant, Charles A. Beers, was appointed his trustee in bankruptcy. On April 23, 1925, appellee, Wilson Brothers, a corporation, filed in the circuit court of Rock Island county a purported affidavit in replevin, signed by William F. Rettke, agent for appellee, describing a quantity of men's furnishings and apparel of the value of $1500 and charging that the same were being wrongfully detained by Haege and the assignee. The jurat was dated April 23, 1925, but was not signed and no seal is attached thereto. A writ of replevin was issued to the

sheriff of said county, which was returned showing that said goods had been replevined and delivered to appellee. The appearances of Haege and of the American Trust and Savings Bank were filed by their attorneys. Thereafter, on motion and affidavit of Charles A. Beers, trustee in bankruptcy of Haege, he was made a party defendant and filed pleas to appellee's declaration. The defendant bank and Haege also filed pleas. Demurrers filed by appellee to certain of said pleas were overruled September 29, 1926, and appellee was ruled to reply within ten days. On October 19, 1926, appellee was defaulted for failure to comply with said rule, and on motion of defendants the suit was dismissed at the costs of appellee and a writ of *retorno habendo* was ordered issued to appellant. Thereafter, on November 12, 1926, by stipulation, the judgment by default was set aside, the cause was reinstated and appellee replied to said pleas. On November 2, 1927, the defendants moved to dismiss said cause for want of an affidavit. On hearing, the "unsworn affidavit" was presented and the motion was denied. The cause was tried and a verdict returned in favor of appellee. Judgment was rendered thereon, from which judgment appellant prosecuted an appeal to the Appellate Court for the Second District, where the judgment was affirmed. A certificate of importance was granted and the cause is here on appeal.

It is first contended that the court erred in denying the motion of the appellant to dismiss the cause, it being contended that the filing of an affidavit as provided by the statute is a jurisdictional matter and cannot be waived. In the state of this record we are not called upon to pass upon the sufficiency of the purported affidavit. It is a historical fact that the first Illinois State replevin statute recognized replevin as an action at law existing in Illinois prior to the enactment of such first statute on the subject. The circuit court of Rock Island county had jurisdiction of the subject matter of suits in replevin, to which this

case belongs. When appellee entered its appearance, filed what purported to be an affidavit for replevin and filed its declaration, it submitted its entity to the jurisdiction of the court and consented to the court taking jurisdiction of the matter of the particular case, and it could not thereafter question such jurisdiction. When appellant entered his appearance in the cause and filed his pleas to appellee's declaration he thereby gave the court jurisdiction of his person and consented to the jurisdiction of the court in the matter of the particular case. The court having jurisdiction of the subject matter of the general class to which this case belonged, jurisdiction of the persons of the parties to the cause and jurisdiction of the matter of this particular case, had jurisdiction—*i. e.,* the right and power to hear and determine the particular case. While lack of jurisdiction of the court as to the subject matter cannot be waived, yet the method by which jurisdiction of a particular case within the general class of cases is obtained, and any differences or irregularities in respect thereto, may be waived, and is waived unless reasonable objection is made in accordance with the established practice. While a defendant may stand on all his legal rights and require all the forms of law to be pursued before he can be required to answer in a case in which the court has general jurisdiction, he may dispense with the process altogether, waive irregular process and appear in the case. (*Brown* v. *VanKeuren,* 340 Ill. 118; *People* v. *Southern Gem Co.* 332 id. 370; *City of Rock Island* v. *Chippiannock Sanitary Ass'n,* 328 id. 236; *Taylor Coal Co.* v. *Industrial Com.* 301 id. 381; *O'Brien* v. *People,* 216 id. 354; *Miller* v. *Rowen,* 251 id. 344; *Center* v. *Gibney,* 71 id. 557; *Price* v. *Pittsburgh, Fort Wayne and Chicago Railroad Co.* 40 id. 44; *Randolph County* v. *Ralls,* 18 id. 29; *Mitchell* v. *Jacobs,* 17 id. 235; *Beecher* v. *James,* 2 Scam. 462; *Easton* v. *Altum,* 1 Scam. 250; *Coleen* v. *Figgins,* Breese, 19.) The court did not err in denying appellant's motion to dismiss the cause.

The principal ground relied on to support the action of replevin was that Haege on February 10, 1924, rendered an inventory or financial statement to appellee, and on the strength of that statement the goods in question, and others, were sold by appellee to Haege; that said financial statement was false and misrepresented Haege's financial condition; that among other things there were over $11,000 worth of notes held by the People's National Bank of Rock Island, signed by Haege, which were not contained in said statement; that some $7000 of indebtedness was owing to the G. B. Tailoring Company of Chicago which was also not contained in the statement or inventory. Whether or not Haege's financial statement was false with reference to his indebtedness to the People's National Bank was a controverted question. Haege claimed with reference thereto that he had had an arrangement with J. L. Vernon, president of the bank, whereby the notes given by Haege were to be adjusted by services rendered by him in the matter of the disposition of some department stores in Rock Island, and he had performed services under that arrangement and sold the Young & McCombs store. He testified that after the transaction had been completed he had a talk with Vernon about it in the bank, in the forepart of December; that he went in and began to talk about the notes in the bank; that he told Vernon that he wanted to have them fixed up; that he had completed his job selling the store and wanted it fixed, and that Vernon said, "Tom, don't worry now; they will all be taken care of."

Appellee, for the purpose of showing Haege's indebtedness to the bank, offered in evidence a register of notes kept by the bank. Appellant objected to this evidence on the grounds that no basis had been laid for its introduction, that it was not such a book of account as the statute contemplated, and the statements therein contained were self-serving statements. When counsel commenced reading the statute the court said: "I know what the statute is,

Mr. Huber, but there have been all sorts of decisions here and the loosening up of the old rules, and if we can't depend upon the books of the bank what can we depend upon?" and overruled appellant's objection. The court's statement, "and if we can't depend upon the books of the bank what can we depend upon," was upon one of the material controverted questions in the case and indicated his opinion that the books of the bank were to be depended upon rather than the opposing testimony of the witnesses, and would undoubtedly be taken into consideration by the jury in their consideration as to the weight to be given to the evidence adduced by the respective parties. The effect of this statement by the court would naturally be prejudicial to appellant.

During the examination of Haege, who was called as a witness by appellee and interrogated in chief by Mr. Crampton, attorney for appellee, as to the G. B. Tailoring Company account, he was asked: "I will hand you, Mr. Haege, what purports to be a statement of account of the G. B. Tailoring Company of Chicago, Illinois, on which the first item states: 'January 1st, balance' (this is 1924) '$5954.32; interest due $15; total $5969.32,' and ask you whether or not that is a correct statement of account of the G. B. Tailoring Company?" to which he replied: "I do not remember. At that time we were buying goods from them on consignment basis, which would be charged to me and I would return the goods and then get more goods. I am sure I don't know." Thereafter the following colloquy occurred:

Mr. Crampton: "If the court please, in view of the attitude of this witness—

Mr. Huber: "We object to the remark of counsel.

Mr. Crampton: "We would like to ask—

The court: "You may proceed with your statement.

Mr. Crampton: "We would like to ask that the trustee, who is a party to this suit, be brought into court and show what was done with the ledger sheets covering this period

of time, which is highly material and which should be produced before this court so that the evidence and books may be shown and produced before the jury.

Mr. Neiger: "The trustee in bankruptcy has not been subpœnaed to be in court.

The court: "He has been ordered to produce the books.

Mr. Neiger: "He has produced all the books."

After further argument the court said: "I don't care for these remarks. You are entitled to get this evidence. It is shown here there were books, and it is presumed they are in the hands of the trustee. Let the trustee be subpœnaed to appear here." Then, after some more argument, the court remarked: "I don't care for this discussion back and forth. The jury is not interested in this matter. Subpœna the trustee or notify him to come here. I think counsel for the defendant owe it to the court.

Mr. Neiger: "I don't think we owe any such duty. If we wanted a witness we would subpœna him.

The court: "I thought you did. I don't know that the court can enforce it. It is customary for counsel to have their client there if they want to use him as a witness. I think counsel owe that to the court, not to delay the proceedings.

Mr. Neiger: "I don't know that counsel is required to produce evidence for the other side.

The court: "I have. Where it is disclosed that my client is wanted as a witness I have got to produce him.

Mr. Neiger: "I do object to the remark of the court that it is incumbent upon us, and our duty, to bring him here.

The court: "I think it is your duty. It is your duty as officers of the court to expedite the business of the court all you can, instead of having the court stop here for the purpose of subpœnaing him when a word from you will get your client here."

Thereafter, it appearing that appellant was out of the city, the following occurred:

Mr. Crampton: "It appears to us, if the court please, that the trustee, being a public officer, being an officer of the United States court and being charged with the custody and control of all the records of the bankrupt, and in view of the fact that these have not been produced here in compliance with the court's order, that that testimony should be admitted and should be entitled to go to the jury to see that evidence.

Mr. Neiger: "We would like to make an objection here. The defendants object to the remarks of counsel that the books in the possession of the trustee have not been furnished in compliance with the court's order."

The court thereupon, over appellant's objection, admitted in evidence a document which was the claim of the G. B. Tailoring Company filed in bankruptcy court against Thomas Haege, bankrupt, amounting to $7130.58. This document was not competent evidence. Appellant had no personal knowledge of the matters in issue. If he had produced in court, as his attorney said he had, all the books in his possession there was no reason for his remaining in court unless his attorney desired him to do so. If appellee desired for any purpose to use him as a witness it should have had a subpoena served upon him. Some of the language of the court and counsel called in question the good faith of appellant's attorney and was prejudicial to appellant.

The judgments of the Appellate Court for the Second District and of the circuit court of Rock Island county are reversed and the cause remanded to the circuit court.

*Reversed and remanded.*

Mr. Justice Jones took no part in this decision.
Mr. Justice Orr, dissenting.